STATE OF CONNECTICUT *v.* DOMINIC BRUNO
(2065)

DANNEHY, C.P.J., HULL and DUPONT, Js.

Argued October 5, 1983—decision released March 13, 1984

*Ronald E. Cassidento,* for the appellant (defendant).

*Linda N. Knight,* deputy assistant state's attorney, with whom were *John M. Massameno,* assistant state's attorney, and, on the brief, *Austin J. McGuigan,* chief state's attorney, and *John Dropick,* assistant state's attorney, for the appellee (state).

DUPONT, J. The defendant raises four issues on appeal.[1] They are: (1) Whether the court should have suppressed certain testimonial and physical evidence claimed by the defendant to have been the indirect result of an unlawful search;[2] (2) whether the court should have excluded two tapes and recorders from evi-

---

[1] This appeal, originally filed in the Supreme Court, was, on motion by the state, transferred to the Appellate Session of the Superior Court and was thereafter transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (c).

[2] The defendant's preliminary statement of issues and the first argumentative heading of his brief seek an all-encompassing review of the court's failure to suppress the testimony of two witnesses, the testimony of a third witness, in part, and numerous tapes. The discussion in his brief, however, is limited to the tapes supplied by one witness, Andrew Healy, and to the live testimony of that witness and another witness named Michael McCarthy. The failure to brief those issues relating to the claimed error in the sup-

dence because the state had not shown that they were in substantially the same condition as at the time of the "offense"; (3) whether the defendant and his counsel should have been allowed to inspect the medical and psychiatric records of a state's witness and (4) whether the court should have suppressed the testimony of employees of a police department concerning telephonic statements by the defendant to them after his arraignment.

The defendant's case was tried to the court and he was found guilty of six counts of eavesdropping, one count of conspiracy to eavesdrop, and two counts of criminal mischief. He, and the witnesses whose testimony is the subject of the claimed errors in the trial court's failure to suppress, were all employees of a cablevision company. A witness, the former girl friend of the defendant, was also an employee of the cablevision company. She initiated a police investigation of the defendant by reporting to the police her suspicions that the defendant had stolen some personalty of hers, and that she believed that the defendant was wiretapping. A warrant was obtained in order to search the defendant's car for her allegedly stolen personal possessions. The items were found in the car, as well as some electronic surveillance equipment. The trial court determined that the search was illegal, and suppressed from evidence the items seized.

Other employees of the company, Michael McCarthy and Andrew Healy, had aided the defendant in monitor-

pression of other evidence constitutes an abandonment of those issues and they are not considered. *Czarnecki* v. *Plastics Liquidating Co.,* 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979). The state claims that the issues which were briefed are not reviewable because transcripts and the memorandum of decision relating to the suppression hearing were not filed by the defendant. The state, however, in its appendices to its brief has supplied two memoranda of decision. The first held that the search, pursuant to a warrant, of the defendant's car was unlawful, and the second, that the live testimony of Andrew Healy and Michael McCarthy and tapes supplied by Healy would not be suppressed. This court also has the transcripts of the testimony of McCarthy and Healy. The record is sufficient for appellate review.

ing conversations of the defendant's former girl friend, and in engaging in acts of vandalism. One of them, Healy, had removed wiretap equipment from the ceiling of the cablevision office at the request of the defendant, and had transported it to New York where it remained for approximately six weeks until Healy delivered it to the police.

## I

The trial court found that neither the live testimony of Healy and McCarthy nor the tapes and recorders supplied by Healy should be suppressed. It reasoned that the initial search of the defendant's car was made in good faith, in reliance on a signed search warrant and that the witnesses' testimony was sufficiently attenuated from the initial illegality of the search to dissipate the taint of that illegality. The court further found that the testimony was derived from sources independent of the initial search, and that a substantial length of time had elapsed between the illegal search and the discovery of the tapes supplied by Healy. The court not only made findings. It detailed the facts upon which its conclusions were based, noting particularly that Healy's cooperation as a witness stemmed from his being granted accelerated rehabilitation on condition that he testify truthfully and completely in the cases involving the defendant.

The court applied the correct tests for determining whether the evidence to be suppressed was a constitutionally impermissible product of an illegal search warrant. *United States* v. *Crews,* 445 U.S. 463, 469, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); *Wong Sun* v. *United States,* 371 U.S. 471, 487–88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319 (1920); *State* v. *Arpin,* 188 Conn. 183, 190–92, 448 A.2d 1334 (1982).

The defendant also claims that the court erred in allowing into evidence the two tapes and recorders which Healy had secreted in New York for approximately six weeks. It is the defendant's claim that the state did not show that they were in substantially the same condition when turned over to the police as they were when Healy removed them from the ceiling of the cablevision company. Physical evidence is admissible if there is a reasonable probability that it has not been changed in any important respect from its original condition. *United States* v. *Albert,* 595 F.2d 283, 290 (5th Cir. 1979).

There was no abuse of discretion in the admission of this evidence. During the trial, Healy identified the tapes and recorders as being the same ones he had found in the cablevision company's ceiling. The state is not required to prove every circumstance in the chain of custody by producing all persons who were in a position to come into contact with the evidence. *State* v. *Piskorski,* 177 Conn. 677, 696–97, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Chesney,* 166 Conn. 630, 638, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974). The trial court, here, considered the nature of the articles and all of the circumstances surrounding their preservation, and its ruling need not be disturbed.

## II

Prior to the testimony of the defendant's former girl friend, the defense subpoenaed her medical records for the years 1978 and 1979 from the Charlotte Hungerford Hospital, which included the records of her treatment in the psychiatric inpatient unit of the hospital. The hospital filed a motion to quash the subpoena, in which the witness joined. Thereupon, the defendant moved for permission to review the records. The court

granted the motion to quash the subpoena and denied the defendant's motion to review the records. The court acted pursuant to General Statutes § 52-146e which provides in pertinent part that "no person shall disclose or transmit any . . . communications or records where the patient is identifiable, or the substance or any part or parts of any resume thereof, to any person, any corporation or any governmental agency, municipal, state or federal, without the consent of the patient or his authorized representative."[3] The communications and records referred to are the oral and written communications relating to diagnosis or treatment of a mental condition made between the patient and a psychiatrist. General Statutes § 52-146d (2).

The court refused to permit the defendant access to the records and refused to examine them in camera, stating that even an in camera examination would violate the blanket prohibition of the statute. There was no claim by the defendant that any of the exceptions to disclosure as listed in General Statutes § 52-146e applied.[4]

Defense counsel stated that "my concept is that [the records] be marked as an exhibit for identification for purpose of examination. The lady will testify, I think everyone expects her to, and then we get to a question of how material or relevant this information might

[3] Public Acts 1982, No. 82-160, rephrased and reorganized General Statutes § 52-146e. The above language was in force as of the date of the hearing on the motion to quash the subpoena. The 1982 amendment provides that no person "may" disclose psychiatric records and communications, whereas the statute prior to 1982 provided that no person "shall" disclose psychiatric records and communications.

[4] General Statutes § 52-146e states that the exceptions to disclosure are as provided in §§ 52-146f to 52-146i, inclusive. The exceptions of the latter statutes allow disclosure of communications or records to other mental health facilities; when there is a substantial risk of imminent physical injury to the patient or others; if there has been a court ordered psychiatric examination; in certain probate court proceedings; in certain civil proceedings; under controlled conditions, to the commissioner of mental health.

be for purposes of subsequent introduction in the court-room." The records were never marked as an exhibit for identification and the defendant never formally offered them, although the defendant took an exception at the conclusion of the hearing to the court's rulings on the motion to quash the subpoena and the motion for permission to examine the record. The records, therefore, not having been marked as an exhibit for identification, are not available to this court.[5]

It is the defendant's position that the court erred in denying the defendant through his counsel the right to inspect the medical and psychiatric records of the witness. He claims that the denial precluded the defendant from conducting an effective cross-examination of the witness.[6] Basically, the defendant claims that his right to confront the witnesses against him as guaranteed by the sixth amendment to the United States constitution outweighs any statutory right of confidentiality the witness might have in communications she had with a psychiatrist while undergoing psychiatric treatment. He cites *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), and *United States* v. *Lindstrom,* 698 F.2d 1154 (11th Cir. 1983), in support of his position. *Davis* v. *Alaska,* supra, did not involve a statutory privilege but a statutory prohibition against the release of juvenile court records.

The purpose of a statute prohibiting disclosure of juvenile delinquency adjudications is to foster rehabilitative goals by preserving the anonymity of a juvenile offender, whereas the purpose of a statute prohibiting disclosure of psychiatric records is to obtain needed

[5] In view of the decision in *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984), the failure to preserve the records for appellate review, on the facts of this case, is irrelevant.

[6] The state claims that this court may not review this issue because the defendant failed to file a transcript of the cross-examination. The state, however, filed the transcript and it is available to this court. Cf. *State* v. *Albin,* 178 Conn. 549, 555–56, 424 A.2d 259 (1979).

care without fear of subsequent public disclosure. At the time of the juvenile's acts there would be no expectation of confidentiality, whereas at the time a psychiatric patient seeks care there would be such an expectation of confidentiality.

*Davis* v. *Alaska,* supra, held that the constitutional right of confrontation which guarantees the right to effective cross-examination of an adverse witness is superior to the state's interest in preserving the confidentiality of juvenile delinquency adjudications. Although the statutory prohibitions differ, at least one state court has equated the two. *State* v. *Farrow,* 116 N.H. 731, 733, 366 A.2d 1177 (1976). In *United States* v. *Lindstrom,* supra, error was found in the denial to the defense of medical records which revealed that the government's witness suffered from psychiatric illnesses, including delusions, but the case did not involve a statute prohibiting disclosure of such records.[7]

A witness may be impeached by questions relating to credibility, including questions about mental conditions which are relevant to his ability to perceive, recollect and articulate or to his capacity for truthfulness. Legal journals, articles, treatises and case law are replete with the proposition that the permissible extent of cross-examination includes questions relating to bias, motive, mental state or credibility. 2 Wharton, Criminal Evidence (13th Ed. Torcia) §§ 372 through 380; 81 Am. Jur. 2d, Witnesses § 524 et seq.; note, 44 A.L.R.3d

---

[7] In the present case, at the hearing on the motion to quash the subpoena and on the motion for permission to examine psychiatric records, the court concluded that a federal statute, Drug Abuse Prevention, Treatment and Rehabilitation Act § 408 (a), 21 U.S.C.A. § 1175 (a), which prohibits disclosure of similar records, did not control and that the state statute did control, without contravention of federal law. No issue as to this conclusion is raised on appeal. The federal statute herein cited was not involved in *United States* v. *Lindstrom,* 698 F.2d 1154 (11th Cir. 1983).

1203; Juviler, "Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach," 48 Calif. L. Rev. 648 (1960).

In the present case, the defendant elicited testimony that the witness was under psychiatric treatment for alcohol abuse in January of 1979, that she was treated for it for five days at the Charlotte Hungerford Hospital, that she was an alcoholic whose problems with alcohol began prior to 1977, that she would sometimes drink herself into a stupor or unconsciousness, that she sometimes took codeine while drinking alcohol and that she had attempted suicide. The witness also testified that she was angry at the defendant during the trial and had yelled a derogatory comment at him in the courthouse. The court properly allowed questions relating to the mental condition of the witness, proferred to impeach credibility, and related to events occurring shortly before or after the occurrence up to the time of trial. *State* v. *Piskorski,* supra, 736–37. It is crucial that the trier be equipped with testimony of the witness relating to past mental problems and past psychiatric care, if relevant in time, in order to allow it to make a sound judgment as to the reliability of a witness. *United States* v. *Guillette,* 404 F. Sup. 1360, 1370 (D. Conn. 1975); *Taborsky* v. *State,* 142 Conn. 619, 629, 116 A.2d 433 (1955).

The claim here, however, is not that the defendant was restricted in any way in cross-examination, but that without examination of the psychiatric records of the witness the defendant's right to confrontation was impaired to such an extent that he was denied a fair trial. The court, in resolving the issue, had to evaluate whether it was necessary to invade the statutory privacy of the witness in order to provide the defendant with his constitutional right to confront that witness, which includes the ability to cross-examine her effectively. Other states' statutes which grant a privi-

lege to communications between physician and patient are of varying terminology and harbor many problems of interpretation as to the extent of their application. Note, 7 A.L.R.3d 1458. The Connecticut statute differs in some respects from other state statutes, but certain decisional paradigms are present. The purpose of the privilege is to enable the patient to obtain care without fear of unwarranted embarrassment, and without apprehension of a future detrimental disclosure in court, either of which might deter the patient from revealing his true symptoms. *State, In Interest of M.P.C.*, 165 N. J. Super. 131, 136, 397 A.2d 1092 (1979). The privilege is more likely to fall in the context of civil cases where the decisive issue is the psychiatric condition of the patient, or when the psychiatric records relate to court-ordered treatment. *Miller* v. *Colonial Refrigerated Transportation, Inc.*, 81 F.R.D. 741 (M.D. Pa. 1979); *People* v. *Perry*, 7 Cal. 3d 756, 499 P.2d 129, 103 Cal. Rptr. 161 (1972); *People* v. *Hopkins*, 44 Cal. App. 3d 669, 119 Cal. Rptr. 61 (1975); *Roper* v. *Roper*, 336 So. 2d 654 (Fla. Dist. Ct. App. 1976).

Connecticut courts have reviewed our statute in a criminal setting. In *State* v. *White*, 169 Conn. 223, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975), the court found that General Statutes §§ 52-146d through 52-146j, which seemingly create "a broad psychiatric-patient privilege," do not prevent the release of records relating to drug dependency treatment to a sentencing court where a defendant's treatment was a condition of probation. The court reasoned that the probationer was aware that his treatment was subject to the statutory scheme of probation, and that he had the expectation that such records might be submitted to the court in the event his probation was violated. The court found a general privilege in the stat-

ute, but also found that General Statutes § 19-492 (c)[8] granted an exception which would prevent the general privilege from being exerted. Thus, the court decided that the stated exceptions of General Statutes § 52-146e are not the only exceptions which would allow disclosure of psychiatric records.

Upon another review of General Statutes §§ 52-146d through 52-146j, the court, in *State* v. *Toste,* 178 Conn. 626, 629, 424 A.2d 293 (1979), reiterated the finding of *State* v. *White,* supra, to be that the exceptions listed in General Statutes § 52-146e are not all inclusive. *State* v. *Toste,* supra, however, held that, without a court order requiring a psychiatrist to examine a defendant any communications between a state psychiatric witness and the defendant were privileged under the statute, unless waived.

*State* v. *Storlazzi,* 191 Conn. 453, 455–63, 464 A.2d 829 (1983), was the logical culmination of the holdings in the *White* and *Toste* cases. Another exception to the disclosure of psychiatric records was found to be present in General Statutes § 52-146e. The court, in those cases in which the witness was not given the opportunity to assert the privilege, should examine psychiatric records, in camera, to determine whether the defendant must have access to them for purposes of inquiring into the competency of a witness to testify.[9]

In *State* v. *Storlazzi,* supra, the court did not decide whether its decision would have been different if the witness had been given the opportunity to assert the

[8] General Statutes (Rev. to 1975) § 19-492 (c) provided: "No physician or staff member of any facility for the treatment and rehabilitation of drug-dependant persons pursuant to this chapter [Dependency-Producing Drugs] who submits any report or files any petition authorized by this chapter shall be held to have violated any otherwise confidential relationship."

[9] The court, in *State* v. *Storlazzi,* 191 Conn. 453, 464 A.2d 829 (1983), reviewed the subject records to determine if the trial court's review, leading to the conclusion that they should not be made available to the defendant, was correct.

privilege. Here, unlike *Storlazzi,* the privilege was asserted. When the privilege is asserted, there must be an initial determination that a sufficient showing has been made to believe reasonably that the failure to produce the records was likely to impair the defendant's right to confront the witness against him. *State v. Esposito,* 192 Conn. 166, 179, 471 A.2d 949 (1984). Such a showing was made in the present case. Since the witness did not consent to a release of the records to anyone, including the court for an in camera review,[10] the court "may" have become obliged to strike the testimony of the witness. *State v. Esposito,* supra, 179–80.[11]

A review of the record and transcripts in the present case, however, clearly demonstrates that the evidence offered by the state, even without the testimony of the witness, was sufficient to prove the defendant's guilt beyond a reasonable doubt. Even if we assume that the trial court would have, under the holding of *State v. Esposito,* supra, stricken the testimony of the witness, the defendant still would have been proven guilty beyond a reasonable doubt.

---

[10] The witness here asserted the privilege through her own attorney and it is assumed for the purposes of this opinion that she resisted an observation of her psychiatric records by anyone, including the court.

[11] *State v. Esposito,* 192 Conn. 166, 471 A.2d 949 (1984), does not cite *State v. White,* 169 Conn. 223, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975), *State v. Toste,* 178 Conn. 626, 424 A.2d 293 (1979), or *State v. Storlazzi,* 191 Conn. 453, 464 A.2d 829 (1983). Since the lack of an opportunity to assert the privilege is comparable to a failure to waive the privilege, the holding of *State v. Storlazzi,* supra, may have been undermined by *State v. Esposito.* It is clear, however, that the *Esposito* court views *State v. Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), as inapposite. *State v. Esposito,* supra, 178. The *Januszewski* court held that the statutory exemption of public disclosure of personnel records under General Statutes § 1-19 cannot stand where the "defendant's right to impeach [a] key witness is involved" and that the trial court's refusal to make an in camera inspection of the witness' personnel file for material relevant to the issue of credibility was error. *State v. Januszewski,* supra, 173–74.

There was no error in the refusal to examine the psychiatric records in camera.

## III

After arraignment and while represented by counsel, the defendant initiated telephone conversations with a police officer and a police dispatcher. The purpose of the calls was an apparent attempt by the defendant to elicit information from them about his pending cases. The defendant claims that it was error to refuse to suppress the testimony of these police department employees on the ground that the testimony violated his right to effective assistance of counsel and his privilege against self-incrimination.

Upon arraignment the defendant was given the warnings prescribed by *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The calls were made thereafter and the defendant knew that he was talking to police employees. He originated the calls and could have terminated them at any time. Under these facts, it is difficult to conclude that he was in a coercive or custodial environment or that the state was engaging in interrogation. *Rhode Island* v. *Innis,* 446 U.S. 291, 300–301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); *Oregon* v. *Mathiason,* 429 U.S. 492, 494–95, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). The testimony related to information given by the defendant to the police employees, and it was in no way a product of interrogation initiated by the state. His claim that he was the subject of a custodial interrogation is mortally flawed. *State* v. *DeMatteo,* 186 Conn. 696, 700–701, 443 A.2d 915 (1982).

The defendant knew that the recipients of his calls were employees of the police department, and it was he who created an atmosphere in which interrogation could ensue. Under these conditions, his right to counsel was not violated. *United States* v. *Henry,* 447 U.S. 264, 270–72, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980). The

defendant was hit by the ricochet of his own action. On these facts, there was no deprivation of his constitutional rights.

There is no error.

In this opinion the other judges concurred.

