STATE OF CONNECTICUT *v.* DOMINIC F. BRUNO
(12510)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued June 12—decision released September 3, 1985

*Ronald E. Cassidento,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom were *Linda N. Knight,* deputy assistant state's attorney, and, on the brief, *Austin J. McGuigan,* chief state's attorney, and *John Dropick,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. This is an appeal, after certification, from an Appellate Court decision affirming the conviction of the defendant, Dominic Bruno, after a trial to the court, *Borden, J.,* of six counts of eavesdropping in violation of General Statutes § 53a-189, one count of conspiracy to commit eavesdropping in violation of General Statutes §§ 53a-48 and 53a-189, and two counts of criminal mischief in the first degree in violation of General Statutes § 53a-115. The defendant received an effective sentence of one year, execution suspended after six months, and two years probation, and was fined five hundred dollars. In his appeal to the Appellate Court, the defendant raised four claims of error, none of which the Appellate Court found persuasive. The present appeal concerns only one of these claims, namely, that the trial court's refusal to conduct an in camera inspection of the psychiatric records of a state's witness, or to make the records available to defense counsel, violated the defendant's right to conduct an effective cross-examination of the witness, as guaranteed by the sixth amendment to the United States constitution. We granted certification to review the decision of the Appellate Court finding no error. We affirm the decision of the Appellate Court.

The decision of the Appellate Court describes the underlying facts. *State* v. *Bruno,* 1 Conn. App. 384, 473 A.2d. 311 (1984). The defendant was accused of several instances of wiretapping and of engaging in acts of vandalism. The police investigation of the defendant was initiated by his former girlfriend, who reported

in January, 1979, to the police "her suspicions that the defendant had stolen some personalty of hers, and that she believed that the defendant was wiretapping." Id., 386. In anticipation of the complainant's testimony at trial, "the defense subpoenaed her medical records for the years 1978 and 1979 from the Charlotte Hungerford Hospital, which included the records of her treatment in the psychiatric inpatient unit of the hospital." Id., 388. The hospital moved to quash the subpoena, in which motion the complainant joined, and the defendant filed an application for permission to review the hospital records. The court granted the motion to quash the subpoena and denied the defendant's motion to review the records.

The trial court based its rulings on General Statutes § 52-146e, which at the time of trial provided, in relevant part, that " 'no person shall disclose or transmit any . . . [oral or written] communications or records [relating to diagnosis or treatment of a mental condition made between the patient and a psychiatrist] where the patient is identifiable, or the substance or any part or parts of any resume thereof, to any person, any corporation or any governmental agency, municipal, state or federal, without the consent of the patient or his authorized representative.' " Id., 389. At the hearing on the motion to quash the subpoena, the trial court found that the records sought by the defendant fell within the statutory privilege, and that the blanket prohibition of the statute precluded both the defendant's review of the records and an in camera inspection by the court. The defendant took an exception to the trial court's rulings on the motion to quash the subpoena and the motion for permission to examine the records. Id., 390.

In his appeal to the Appellate Court, the defendant claimed that the trial court's rulings with regard to the witness' psychiatric records precluded him from con-

ducting an effective cross-examination of the witness, in violation of his constitutional right to confront the witnesses against him. Id. After his appeal had been argued in the Appellate Court, but before that court rendered its decision, this court decided the case of *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984). In *Esposito,* we considered the question of when, if ever, a trial court or a criminal defendant should be permitted to inspect the psychiatric records of a state's witness to discover whether they contain relevant impeaching evidence. Id., 176–80. There we decided that "[t]he broad sweep of [General Statutes § 52-146e] covers not only disclosure [of a witness' psychiatric records] to a defendant or his counsel, but also disclosure to a court even for the limited purpose of an in camera examination." Id., 178. We then went on to articulate a procedure which would protect the witness' statutory right to confidentiality while simultaneously safeguarding the defendant's constitutional right effectively to cross-examine the witness. First, the defendant is required to make "a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is to be made available for inspection on appellate review. If the in camera inspection does reveal relevant material then

the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal." Id., 179–80.

The Appellate Court found that the preliminary showing, required under *Esposito,* "that the failure to produce the records was likely to impair the defendant's right to confront the witness against him" had been made. *State* v. *Bruno,* supra, 395. Citing *State* v. *Esposito,* supra, the court acknowledged that "[s]ince the witness did not consent to a release of the records to anyone, including the [trial] court for an in camera review, the [trial] court 'may' have become obliged to strike the testimony of the witness." (Footnotes omitted.) *State* v. *Bruno,* supra. Upon review of the record and transcripts in the case, however, the Appellate Court found a clear showing "that the evidence offered by the state, even without the testimony of the witness, was sufficient to prove the defendant's guilt beyond a reasonable doubt." Id. The court therefore concluded that there was no error because "[e]ven if we assume, that the trial court would have, under the holding of *State* v. *Esposito,* supra, stricken the testimony of the witness, the defendant still would have been proven guilty beyond a reasonable doubt." Id.

In his request to this court for certification, the defendant raised two related issues.[1] The first concerns whether the trial court's refusal to grant the defend-

[1] The defendant's request to this court for certification was in the form of two statements and reads as follows: "The petitioner was denied his sixth amendment right to confront and to conduct an effective cross-examination of the state's primary witness against him as guaranteed by the sixth amendment to the United States constitution in that the witness' psychiatric records were not made available to his counsel and the trial court refused to make an *in camera* inspection of the subpoenaed records. The Appellate Court applied a 'harmless error test' in the violation of his basic constitutional right to confront witnesses, which right goes to the integrity of the fact finding process of determining guilt or innocence in violation of the

ant access to the witness' psychiatric records, or to inspect the records in camera, deprived the defendant of his sixth amendment right effectively to cross-examine the witness. The second issue is whether the Appellate Court erroneously applied a "harmless error test" in reviewing the rulings of the trial court with regard to the witness' psychiatric records.

In an appeal from the Appellate Court, "the focus of our review is not the actions of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo. The only questions that we need consider are those squarely raised by the petition for certification, and we will ordinarily consider these issues in the form in which they have been framed in the Appellate Court." *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985).[2]

The first question raised by the defendant, as to whether his sixth amendment rights were violated by the denial of access to the witness' psychiatric records and the absence of an in camera inspection, is unanswerable. Because "the witness did not consent to a release of the records to anyone, including the court

guidelines set forth in *State* v. *Truppi,* 182 Conn. 449 [438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981)]."

[2] Because we agree with the analysis and the decision of the Appellate Court, we decline to consider the alternate grounds for affirmance contained in the preliminary statement of issues filed by the state pursuant to Practice Book § 3012 (a). Thus, for the purposes of this appeal, we accept the Appellate Court's finding that the defendant made a sufficient showing under *State* v. *Esposito,* 192 Conn. 166, 179, 471 A.2d 949 (1984), "that the failure to produce the [witness' psychiatric] records was likely to impair the defendant's right to confront the witness against him." *State* v. *Bruno,* 1 Conn. App. 384, 395, 473 A.2d 311 (1984). We likewise need not review the Appellate Court's determination that "the evidence offered by the state, even without the testimony of the witness, was sufficient to prove the defendant's guilt beyond a reasonable doubt"; id.; because the defendant has not challenged this finding in the present appeal to this court. See *State* v. *Torrence,* 196 Conn. 430, 434, 493 A.2d 865 (1985).

for an in camera review"; *State* v. *Bruno,* supra; the records are not "available for inspection on appellate review"; *State* v. *Esposito,* supra, 180; by either the Appellate Court or this court. Although the witness in fact testified extensively upon cross-examination by the defendant regarding her psychiatric treatment and hospitalizations, her alcoholism and drug use, her suicide attempts, and her feelings of fear and anger toward the defendant; *State* v. *Bruno,* supra, 392; absent any knowledge of the contents of her psychiatric records, it is impossible to determine whether they included relevant impeaching evidence that was not cumulative or was contrary to her testimony. To rely on the testimony actually elicited on cross-examination in assessing whether the defendant's sixth amendment rights were violated would involve pure speculation as to the contents of the witness' records. The Appellate Court properly did not engage in such a futile exercise, nor do we.

As the Appellate Court correctly noted, "[t]he claim here . . . is not that the defendant was restricted in any way in cross-examination, but that without examination of the psychiatric records of the witness the defendant's right to confrontation was impaired to such an extent that he was denied a fair trial." Id. The Appellate Court rejected the defendant's claim on the ground that, even absent the witness' testimony, there was clearly sufficient evidence to prove the defendant's guilt beyond a reasonable doubt. Id., 395. This brings us to the second question raised by the defendant in his appeal to this court, that is, whether "[t]he Appellate Court applied a 'harmless error test' in the violation of his basic constitutional right to confront witnesses, which right goes to the integrity of the fact finding process of determining guilt or innocence in violation of the guidelines set forth in *State* v. *Truppi,* 182

Conn. 449 [438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981)]."

In *State* v. *Truppi,* supra, 466, this court reversed a defendant's convictions for robbery and kidnapping because the trial court's instructions had shifted to the defendant the burden of proof as to the intent element of those crimes in violation of his due process rights. Although the state urged that the error was harmless in light of the overwhelming evidence of the defendant's guilt; id., 465; we refused "to weigh the evidence of guilt against the uncured damage done by the harmful portion of the instructions"; id., 466; because such an analysis "would transfer to this 'court the jury's function of measuring the evidence by appropriate legal yardsticks.' " Id., quoting *Bollenbach* v. *United States,* 326 U.S. 607, 614, 66 S. Ct. 402, 90 L. Ed. 350 (1946); compare *State* v. *Couture,* 194 Conn. 530, 563, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985) (improper remarks by prosecutor during opening summation to jury required reversal of convictions despite "record that [did] not permit serious doubt of [the defendant's] guilt"), with *State* v. *Cohane,* 193 Conn. 474, 485, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984) (trial court's erroneous refusal to instruct jury that no adverse inference could be drawn from the defendant's failure to testify "may be held harmless only if the evidence against the accused is so overwhelming that we can conclude as a matter of law that the jury's verdict was not influenced by the absence of [the] instruction").

The defendant argues that the analysis applied by the Appellate Court conflicts with the established principle that "certain constitutional protections are so central to the requirement of a fair trial that their violation absolutely requires that the conviction from which they arose be set aside." *State* v. *Cohane,* supra, 484, citing

*Chapman* v. *California,* 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967). The defendant cites two cases in which the United States Supreme Court stated that " 'a denial of cross-examination without waiver . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' *Brookhart* v. *Janis,* 384 U.S. 1, 3 [86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966)]." *Smith* v. *Illinois,* 390 U.S. 129, 131, 88 S. Ct. 748, 19 L. Ed. 2d 956 (1968). A close examination of these cases reveals, however, that the defendant's reliance upon them is misplaced.

In *Brookhart* v. *Janis,* supra, 7, the defendant's attorney informed the trial court "that the State need make only a prima facie showing of guilt and that he would neither offer evidence on [the defendant's] behalf nor cross-examine any of the State's witnesses." The United States Supreme Court overturned the conviction because the record failed to demonstrate that the defendant himself knowingly and intelligently agreed "to be tried in a proceeding which was the equivalent of a guilty plea and in which he would not have the right to be confronted with and cross-examine the witnesses against him." Id. In *Smith* v. *Illinois,* supra, where the "only real question at the trial . . . was the relative credibility of the petitioner and [the principal] prosecution witness"; id., 130; the defendant was not permitted to ask the witness either his name or address. The Supreme Court held that "[t]o forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." Id., 131.

In *Brookhart* and *Smith,* each defendant demonstrated a clear violation of his constitutional right to confront and cross-examine the witnesses against him. As previously discussed, however, it is impossible to determine whether the defendant's right to cross-

examine the witness was impaired in this case absent an opportunity to review the witness' psychiatric records. It is to protect a defendant from the *possibility* of a violation of his confrontation rights that *State* v. *Esposito,* supra, contemplates striking the testimony of a witness who asserts the privilege of confidentiality in the face of a showing of likely impairment of those rights absent disclosure. Id., 179–80. In light of Esposito, because this defendant made the requisite preliminary showing, he would have been entitled to have the witness' testimony stricken upon her refusal to permit an in camera inspection. Thus, although the defendant cannot prove that he was deprived of his sixth amendment right to confront the witness, he can claim that her testimony should have been excluded from the evidence upon which his guilt was determined and that the procedure followed below was erroneous.

This court has previously applied the harmless error doctrine to uphold convictions, despite the erroneous admission of testimony at trial, where there was overwhelming evidence of the defendant's guilt. See, e.g., *State* v. *Brown,* 187 Conn. 602, 612, 447 A.2d 734 (1982); *State* v. *Briggs,* 179 Conn. 328, 336–37, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *Zeko,* 177 Conn. 545, 557, 418 A.2d 917 (1979); *Palmer* v. *Adams,* 162 Conn. 316, 328, 294 A.2d 297 (1972); see also *Brown* v. *United States,* 411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973). In light of the Appellate Court's unchallenged finding that, even absent the witness' testimony, "the defendant still would have been proven guilty beyond a reasonable doubt"; *State* v. *Bruno,* supra, 395; we agree that the convictions should be sustained. We interpret the Appellate Court's finding to mean that, as a matter of law, the remaining evidence against the

defendant was so overwhelming as to render any error in not striking the complainant's testimony harmless beyond a reasonable doubt.

The decision of the Appellate Court is affirmed.

In this opinion PETERS, C. J., HEALEY and SANTANIELLO, Js., concurred.

SHEA, J., concurring. I agree with the majority's application in this case of the harmless error doctrine in the form appropriate for errors of constitutional import, i.e., harmlessness beyond a reasonable doubt. The opinion of the Appellate Court, however, appears to have employed a different standard: "A review of the record and transcripts in the present case, however, clearly demonstrates that the evidence offered by the state, even without the testimony of the witness, was sufficient to prove the defendant's guilt beyond a reasonable doubt." *State* v. *Bruno,* 1 Conn. App. 384, 395, 473 A.2d 311 (1984). This sentence, declaring that, even with the omission of the testimony that should have been stricken, the state's evidence was sufficient to prove guilt implies that the criterion used was whether the remaining evidence was sufficient as a matter of law to support the finding. Legal sufficiency of the evidence is not the test for harmless error even if only a nonconstitutional error is involved. The harmlessness of an error depends upon its impact on the trier and the result, not upon whether the particular evidence involved was legally essential to support the finding.

Applying the constitutional standard, I would find the evidence, absent the testimony of the witness who asserted her psychiatric privilege, to be so overwhelming as to render the error harmless beyond a reasonable doubt. The physical evidence, the tapes and the recording equipment clearly established the substance

of the crimes, and other witnesses provided more than ample evidence of the defendant's involvement in those crimes, including his own admissions. The testimony that should have been stricken was of some significance in explaining the defendant's motivation, but was otherwise merely repetitious of facts amply proved by physical exhibits or by other witnesses. The defendant was acquitted of the one charge upon which the testimony of this witness was of great significance, the theft of her jewelry.

Accordingly, I agree with the result.

STATE OF CONNECTICUT *v.* JOSE LOPEZ
(12274)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

338

Argued May 1—decision released September 3, 1985

*Daniel V. Presnick,* for the appellant (defendant).

*John A. Connelly,* state's attorney, with whom, on the brief, was *Catherine J. Capuano,* deputy assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Jose Lopez, pleaded guilty to a charge of murder, in violation of General Statutes § 53a-54a, on April 18, 1983.[1] Before accept-

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under

ing the defendant's plea, the trial court did a search-
ing canvass, concluded that there was a factual basis
for the charge and that the plea was voluntary. Subse-
quent to the plea, but prior to sentencing, the defend-
ant retained other counsel and filed a motion to
withdraw his guilty plea. The motion was based on a
claim that "[t]he plea was involuntary, or was entered
without knowledge of the nature of the charge," and
that it "resulted from the denial of effective assistance
of counsel." The trial court denied the motion to with-
draw the plea after an extensive hearing and imposed
a sentence of twenty-five years imprisonment. The
defendant appeals, claiming that the trial court erred
in: (1) finding that the defendant's guilty plea was
knowing, intelligent and voluntary and made with the
effective assistance of counsel; (2) considering the
strength of the state's case and the probable outcome
of a trial in its decision as to whether the defendant
was denied the effective assistance of counsel; (3) fail-
ing adequately to inform the defendant of the nature
of the charge against him and of his right against
self-incrimination prior to accepting his guilty plea;
(4) becoming an active participant in the plea bargain-
ing process by allegedly holding a "secret pretrial con-
ference" from which the defendant and the public were
unconstitutionally excluded; (5) refusing to dismiss the

---

this subsection, it shall be an affirmative defense that the defendant com-
mitted the proscribed act or acts under the influence of extreme emotional
disturbance for which there was a reasonable explanation or excuse, the
reasonableness of which is to be determined from the viewpoint of a per-
son in the defendant's situation under the circumstances as the defendant
believed them to be, provided nothing contained in this subsection shall
constitute a defense to a prosecution for, or preclude a conviction of, man-
slaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, men-
tal defect or other mental abnormality is admissible, in a prosecution under
subsection (a), on the question of whether the defendant acted with intent
to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivi-
sion (2) of section 53a-35a unless it is a capital felony."

charges for lack of a probable cause hearing; (6) denying the defendant's motion to disqualify the court on sentencing; (7) ruling that it lacked the authority to suspend a portion of the sentence; and (8) denying his motion for a waiver of fees, costs and expenses. The defendant also challenges the plea bargaining procedure on constitutional grounds.

The underlying facts of the crime leading to the defendant's guilty plea are as follows: On August 28, 1982, the defendant attended a birthday party for his daughter, held at the home of the child's mother in Waterbury. During the party, an argument occurred in which both the defendant and Juan Ortiz, the new boyfriend of the mother of the defendant's child, became involved. The defendant left the party and drove to his apartment, where he retrieved a shotgun and a box of shotgun shells. He returned to the party and confronted Juan Ortiz. The two men fought, and the defendant fired his gun, intending to hit Ortiz, but instead fatally shooting Sergio Torrez, who was standing nearby. The defendant fled from the house, and was apprehended by the police en route to Hartford later that night. The following morning, August 29, 1982, the defendant, having been fully advised of his *Miranda* rights, gave a signed statement to the Waterbury police recounting the events of the previous night.

On October 5, 1982, the defendant was indicted for the crime of murder, in violation of General Statutes § 53a-54a. The defendant retained counsel and initially entered a plea of not guilty. On April 18, 1983, after assurances from the state that the minimum sentence would be recommended, the defendant withdrew his original plea and entered a plea of guilty to the charged offense. The trial court conducted "a typical searching canvass which included a detailed description of the nature of the charge" and, after finding "that there

was a factual basis for the charge and that the plea was voluntary," accepted the defendant's guilty plea.

On May 20, 1983, the date on which sentencing was scheduled to take place, the defendant appeared with new counsel and filed a motion to withdraw his guilty plea, claiming that "[t]he plea was involuntary, or was entered without knowledge of the nature of the charge," and that it "resulted from the denial of effective assistance of counsel." After an evidentiary hearing, the trial court denied the defendant's motion to withdraw his guilty plea and sentenced him to twenty-five years imprisonment.

I

The defendant's primary claim on appeal is that the trial court erred in accepting his guilty plea and in denying his motion to withdraw that plea. He claims that the plea was involuntary, entered without knowledge of the nature of the charge against him and resulted from ineffective assistance of counsel.

A guilty plea that is not both voluntary and knowing is in violation of due process and thus void. *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *State* v. *Marra,* 174 Conn. 338, 340, 387 A.2d 550 (1978); *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100 (1976). For a guilty plea to be truly voluntary, the defendant must understand the law in relation to the facts. *McCarthy* v. *United States,* supra, 466. Because a defendant waives several constitutional rights when he elects to plead guilty to a criminal offense, the choice of a guilty plea is of profound significance. *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Childree,* 189 Conn. 114, 120, 454 A.2d 1274 (1983). In pleading guilty, a defendant waives his privilege against compulsory self-incrimination, his right to trial by jury and his right to confront his accusers. Practice

Book § 711 (5); *Boykin* v. *Alabama,* supra; *McCarthy* v. *United States,* supra; *State* v. *Childree,* supra. A guilty plea is therefore constitutionally valid only if the record affirmatively discloses that the plea was entered voluntarily and intelligently. *Boykin* v. *Alabama,* supra, 242; *State* v. *Marra,* supra; *Blue* v. *Robinson,* 173 Conn. 360, 373, 377 A.2d 1108 (1977).

A

The defendant first claims that his guilty plea resulted from the denial of the effective assistance of counsel. Specifically, he asserts that his counsel should have questioned him about his intent at the time of the crime and should have informed him of the possibility of conviction of the lesser included offense of manslaughter if he lacked the requisite intent for murder. The defendant maintains that his counsel's failure so to question and inform him resulted in a plea which was not voluntary.

A defendant must satisfy two requirements in order to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. *Myers* v. *Manson,* 192 Conn. 383, 393, 472 A.2d 759 (1984). First, he must prove that the assistance was not " 'within the range of competence displayed by lawyers with ordinary training and skill in the criminal law'; *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), quoting *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975) . . . ." *Myers* v. *Manson,* supra, 393. Second, there must exist " 'such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. *Dukes* v. *Warden,* 161 Conn. 337, 344, 288 A.2d 58 (1971), aff'd, 406 U.S. 250, 92 S. Ct. 1551, 32 L. Ed. 2d 45, reh. denied, 407 U.S. 934, 92 S. Ct. 2464, 32 L. Ed. 2d 817 (1972).' " *Myers* v. *Manson,* supra, 393–94.

In the present case, the defendant is unable to meet even the first of these two requirements. The record indicates that the defendant's original attorney adequately investigated the case and informed the defendant of the charge against him and the likelihood of a murder conviction. At the hearing on his motion to withdraw his guilty plea, the defendant admitted that his counsel had told him of the possibility of conviction of manslaughter in some degree, but that "the probability of such a disposition was highly unlikely."

It is within the range of reasonably competent counsel for an attorney to advise his client to plead guilty even though defenses may conceivably exist. *Parker v. North Carolina,* 397 U.S. 790, 797–98, 90 S. Ct. 1458, 25 L. Ed. 2d 785 (1970); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Jones v. Estelle,* 584 F.2d 687 (5th Cir. 1978); *Herring v. Estelle,* 491 F.2d 125, 128 (5th Cir. 1974). Here, the defendant had signed a voluntary statement that he had left the party in anger, driven to his home, retrieved a gun and ammunition, and returned to the party where he fired the shot that killed the victim. It was thus highly unlikely in this case that the defendant could successfully claim a lack of intent to reduce his conviction from murder to manslaughter. Based on this record, the advice which the defendant received was well within the range of competence required of attorneys representing clients in criminal cases.

B

The defendant claims that the trial court, in denying his motion to withdraw his guilty plea, should not have considered the strength of the state's case and the probable outcome were the case to go to trial. In his brief, he characterizes the court's ruling as improperly resting on "[t]he court's opinion [as to] the guilt or innocence of [the] accused." This characterization,

however, is inaccurate. The defendant's motion to withdraw his plea was largely premised on his assertion that the plea resulted from the ineffective assistance of counsel. As on appeal, the defendant's claim on the motion to withdraw was essentially that he had not been adequately informed of the possibility of a manslaughter conviction. In evaluating this claim, the trial court properly examined the strength of the state's case against the defendant in order to determine whether the defendant's counsel had acted competently in advising him to plead guilty. *McMann* v. *Richardson,* supra, 770–71; *Myers* v. *Manson,* supra, 394. The court reviewed the defendant's voluntary statement to the police, as well as the probable testimony of a number of eyewitnesses, and found that "there was overwhelming evidence as to every element of murder and nothing whatsoever to support any claim of extreme emotional disturbance." This finding was not, as the defendant contends, an expression of the court's opinion as to the defendant's guilt or innocence. Rather, it reflected the court's assessment of the likely outcome of trial, which was necessary to evaluate the defendant's claim of ineffective assistance of counsel. The trial court's analysis and ruling were entirely proper in the context of the defendant's claim.

are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

