[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEPARTMENT OF CHILDREN AND YOUTH SERVICES' MOTION TO QUASH
This is an action by the Administratrix of the Estate of Joshua Rutan, seeking to hold the defendants or some of them responsible for the death of a 15 month old foster child in the care of two of the defendants. The allegations of the complaint suggest that Joshua Rutan was struck by an automobile in the driveway of the foster parents' home. Plaintiff alleges that the defendant Desiree Fafard was negligent in the operation of the motor vehicle and that her parents, Alan and Claire Fafard, were negligent in failing to adequately supervise Joshua.
On July 31, 1990, a notice of deposition and subpoena duces tecum was served on Rebecca Egar, a social CT Page 3572 worker at the Department of Children and Youth Services (hereinafter DCYS) in connection with this action.
Specifically, the DCYS social worker was requested to appear for a deposition and to bring with her the following records:
 Any and all records, including but not limited to all intake information; physical, psychiatric and/or psychological evaluations; counselling and telephone records; recommended actions and opinions regarding the child's best interests, and narrative DCYS notes regarding the now deceased Joshua Rutan, D/O/B: 1/26/88 and his involvement with DCYS and the Foster Care Program. These records should include any documentation regarding Joshua Rutan's placement with Carolyn Gilmont, his placement with Alan and Claire Fafard, his death and his natural parents.
Thereafter, on August 3, 1990, DCYS intervened in this action and filed a motion to quash the deposition and subpoena.
The DCYS and the plaintiff argue in support of the motion to quash, that the records are privileged under section 17-47a of the General Statutes dealing with DCYS records and various other psychiatric and psychological statutory privileges.
DCYS cites the court to cases dealing with various privileges, but section 17-47a is not specifically addressed in cases such as State v. Bruno, 197 Conn. 326 (1985) or State v. Espinosa, 192 Conn. 166 (1984), which deal with the confidential records of state's witnesses in the prosecution of criminal matters. See State v. Apostle, 8 Conn. App. 216,237 (1986).
In the Apostle case, our Appellate Court made it clear that "the rule to be followed in cases involving General Statutes section 17-47a is less clear. The Connecticut Supreme Court has not yet had occasion to determine the question. . ."
None of the parties in this case has brought to the Court's attention a precedent for the present situation.
On the contrary, the DCYS and the plaintiff argue cases which involved the attempt to review the records of a CT Page 3573 sexual assault victim who was a witness and who was still alive.
In the pending situation the plaintiff, bringing the action for the benefit of the estate of the person who would have been able to claim the privilege, is seeking damages for, among other things, "the total destruction of his ability to carry on life's activities and enjoy life. . ." The defendants claim in their opposition to the motion to quash that customarily plaintiffs offer evidence of the background of the decedent for the purpose of projecting the losses claimed. In that regard the defendants indicate that they are entitled to know as much about the history of the plaintiff's decedent as is available to the plaintiff, and that it is unfair, therefore, to withhold the DCYS records.
The Appellate Court, in State v. Apostle, supra, has indicated that under General Statutes section 17-47a, ". . . the decision to breach the confidentiality of the records, therefore, . . . does not lie solely with the child in the care or custody of DCYS, the child's guardian or DCYS. Under certain circumstances, that decision may lie with a court, without the need to follow the Esposito rule."
The child, who would normally be entitled to the confidentiality in this case has unfortunately died. The confidentiality claim dies with the holder of the right.
". . . The claim of privilege can be made solely by the person whose privilege it is. . ." 8 Wigmore, Evidence, section2196 (Rev. 1961).
Also it should be noted that the plaintiff, by its allegations, has put in issue the quality of life of the plaintiff's decedent. See, e.g., section 52-146f(5), Connecticut General Statutes.
In this case the defendants have shown good cause for the need to have available DCYS records relating to the plaintiff's decedent. No showing, however, has been made which would suggest that the defendants have any right to records or information at DCYS or within the knowledge of Rebecca Egar, dealing with the biological parents of the plaintiff's decedent which was also requested in the deposition and subpoena.
Accordingly, for the various reasons indicated above, the Court will grant the motion to quash the deposition and subpoena duces tecum to the extent that it relates to the biological parents of the plaintiff's decedent but denies the CT Page 3574 same to the extent that it purports to provide protection with regard to the plaintiff's decedent himself. Accordingly, the Court orders that the defendants, in their deposition and subpoena are not entitled to information relating to the biological parents of the plaintiff's decedent, including any psychiatric and/or psychological evaluations relating to them, which said information may be redacted from the records provided in response to the subpoena duces tecum.
LEUBA, J.